Argued and submitted January 13, reversed April 18, 1984

JOHNSON et al,
*Petitioners,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(83-AB-1008; CA A28432)

680 P2d 386

Wendy L. Greenwald, Eugene, argued the cause for petitioners. With her on the briefs was Kulongoski, Heid, Durham & Drummonds, Eugene.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief was Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

JOSEPH, C. J.

Gillette, P. J., concurring.

## JOSEPH, C. J.

Petitioners seek review of an Employment Appeals Board order holding that they are subject to recoupment of their unemployment benefits. We reverse.

Petitioners, nine parole and probation officers employed by the Corrections Division (Division), were laid off for a two-week period. They applied for unemployment benefits, disclosing to the Employment Division their layoff status and that their union had filed a grievance over the layoffs. Each petitioner received $175 in unemployment benefits for one week. An arbitrator determined that the layoff violated the collective bargaining agreement, and the Division was ordered to reimburse them for wages lost during the layoff. The Division never requested the arbitrator to consider petitioners' unemployment benefits in determining the back pay award. The Employment Division issued an administrative decision that, because they had received the back pay award, they had each been paid an overpayment of $175 and that they were liable to repay those amounts. A referee and EAB agreed. This appeal followed.

ORS 657.315(1)(b) provides:

"(1)   If it is determined by the assistant director that an individual has been paid benefits to which he was not entitled because:

"* * * * *

"(b)   An initial decision to pay benefits is subsequently reversed by a decision finding the individual was not eligible for such benefits, and the decision establishing the erroneous payment of benefits has become final;

he shall be liable to have a like amount deducted from any benefits otherwise payable to him pursuant to this chapter during the benefit year within which the unauthorized or improper amount was paid. If the amount paid in error is not repaid or recovered within the individual's benefit year as specified above, the amount, or any balance thereof, may be deducted from benefits otherwise payable to the individual for any week or weeks within 52 weeks following the week in which the decision establishing the erroneous payment became final."

The Employment Division contends that ORS 657.315(1)(b) read in conjunction with *former* ORS 657.290(1)[1] authorizes recoupment in this case. Petitioners argue that ORS 657.315(1)(b) does not provide the Employment Division authority to recoup unemployment benefits properly paid to laid-off workers in this proceeding. The disposition of this case, therefore, turns on our interpretation of that provision.

For petitioners to receive unemployment benefits and a back pay award for the same period contradicts common sense and does not further any policy underlying the unemployment compensation scheme. Nonetheless, we are bound by the statute, and the Employment Division's argument that ORS 657.315(1)(b) authorizes recoupment in this manner is not persuasive. By its terms the statute provides the Employment Division with a specific procedure to adjust benefits erroneously paid by deducting the amounts "from any benefits otherwise payable * * * during the benefit year * * * [or] within 52 weeks following the week in which the decision establishing the erroneous payment became final." The only other way the Employment Division can recoup erroneously paid benefits from an individual directly is by a civil action authorized by ORS 657.315(2).

We agree with the Employment Division that *former* ORS 657.290(1) allows it to reconsider prior decisions to pay benefits when facts not previously known at the time of the initial decision become available. We also agree that ORS 657.315(3)[2] indicates a legislative intent to make individual

---

[1] ORS 657.290(1), before its amendment by Or Laws 1983, ch 522, § 5, provided:

"(1) Upon his own motion or upon application of any party to a claim for benefits, the assistant director may in his discretion at any time after the same was made and irrespective of whether it has become final under this chapter, reconsider any previous decision as to clerical errors and errors of computation in the claim and may, with respect to allowing or disallowing in whole or in part a claim for benefits, enter a new decision either upon any grounds or issues not previously ruled upon or in any case where new facts not previously known to the assistant director become available."

[2] ORS 657.315(3) provides:

"(3) If a settlement agreement or an award of back pay is made by or between a public employer and its employe or employes, which agreement takes into consideration unemployment insurance benefits paid to such persons, any amount deducted from sums determined due under such settlement or award on account of such benefits paid shall be reimbursed by the public employer to the Employment Division. The Employment Division shall then credit the account of the claimant's base year employer or employers or to the pool account[,] whichever

recipients of unemployment benefits subject to recoupment of those benefits when they receive back pay awards. However, ORS 657.315(3) not only indicates the legislature's intent that benefits be recovered if a back pay award compensates the recipient for the same period, it also provides the specific procedure by which benefits may be recovered *from a public employer* when they have been paid to public employes who later receive a back pay award.

ORS 657.315(1)(b) does not provide the Employment Division the authority to recoup erroneously paid benefits from petitioners in an administrative action. It provides a procedure to recover by deducting amounts from benefits otherwise payable in the future to the recipient. However, neither it nor ORS 657.315(3) provides for recoupment by the process the Employment Division seeks to use in this case.

Reversed.

**GILLETTE, P. J.,** concurring.

I join fully in the opinion of the Chief Judge. I write separately only to note that, in reaching the result we reach today, we abide by the cardinal rule of statutory construction: What the legislature has written plainly and clearly is what the legislature means. It is not our function to rewrite the statute when, after its enactment, unanticipated anomalies arise. *See also* ORS 174.010.[1] Nonetheless, were we the

---

is appropriate[,] and to the extent of any such reimbursement the Employment Division shall cancel any benefit overpayment charged to the claimant or claimants involved."

OAR 471-30-020(2) provides a further indication that benefits paid before a back pay award are chargeable to a claimant subsequent to his receipt of a back pay award.

"(2) * * * However, back pay awards assigned to specific time periods shall, upon reinstatement, constitute wages and weeks of work as though the individual had been employed during the specific periods."

In other words, once a claimant receives a back pay award assigned to a specific time period, he retrospectively is not considered unemployed during that time period and therefore is not eligible for benefits during that period. Thus, any benefits already paid become erroneous payments, even though the benefits were properly paid at the time they were issued. The rule is not authority to recoup benefits subsequent to back pay awards; that is found in ORS 657.315(1)(b) and (3).

[1]ORS 174.010 provides:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

Supreme Court, we apparently would not be under—or, at least regard ourselves as under—such constraints. *See, e.g., McQuary v. Bel Air Convalescent Homes,* 296 Or 653, 678 P2d 1222 (1984).