Argued and submitted May 2, reversed and remanded June 6, 2012

Ralph A. NICKERSON,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT,
Hillsboro School District 1J,
and Multnomah County School District 1,
*Respondents.*

Employment Appeals Boards
10AB3339, 11AB1861;
A147745

280 P3d 1014

Elizabeth A. Joffe argued the cause for petitioner. With her on the brief was McKanna Bishop Joffe & Arms, LLP.

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, waived appearance for respondent Employment Department.

No appearance for respondent Hillsboro School District 1J.

No appearance for respondent Multnomah County School District 1.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

The Employment Department denied benefits to petitioner, a teachers' aide, during the summer recess between two academic years. During the weeks in question, petitioner was laid off by his then-current employer, the Multnomah County School District (MCSD), as the result of a reduction in force mandated by budget cuts. The department concluded that petitioner was not entitled to benefits during those weeks for two reasons: first, because he had reasonable assurance that he would be employed starting at the end of the summer in the Hillsboro School District (HSD) where he had worked before working for MCSD; and second, because MCSD rescinded its layoff before the next school year started. Petitioner argues on judicial review that, during the weeks when he was laid off—the only weeks for which he claims entitlement to benefits—there is no evidence in the record that he had reasonable assurance from any school district that he would be employed when the next school year began, and that the cancellation of the layoff did not serve retroactively to provide reasonable assurance during the layoff. We agree with petitioner. We therefore reverse and remand.

This case involves application of ORS 657.221(1), the statute under which some school employees are ineligible for unemployment benefits during summer vacation. The statute provides:

"Benefits based on services performed * * * for an educational institution or institution of higher education shall be payable to an individual in the same amount, on the same terms and subject to the same conditions as benefits payable on the basis of other service subject to this chapter. However:

"(a) Benefits shall not be paid on the basis of such services for any week of unemployment that commences during a period between two successive academic years or terms if the individual performs such services in the first academic year or term and there is a reasonable assurance that the individual will perform any such services in the second academic year or term for any institution[.]"

The department rules define "reasonable assurance" as follows:

> " '[R]easonable assurance' means a written contract, written notification or any agreement, express or implied, that the employee will perform services immediately following the academic year, term, vacation period or holiday recess which is in the same or similar capacity unless the economic terms and conditions of the employment in the second year or period are substantially less than the employment in the first year or period. A finding of reasonable assurance may be based on the totality of circumstances."

OAR 471-030-0075(1).

The relevant facts are few and undisputed. Petitioner worked for HSD as an educational assistant for four and one-half years before resigning on September 18, 2009, to take a similar position with MCSD beginning three days later. Petitioner worked in his new position with MCSD for the entire 2009-10 academic year and, in April of that year, he was provided with reasonable assurance that he would be offered the same position for the following academic year, 2010-11. However, on July 19, 2010, midway through the summer recess, MCSD withdrew its offer of employment to petitioner and some 50 other employees for the coming school year "for budgetary reasons." At a meeting explaining that decision, a school official told the employees that they would be eligible for unemployment benefits, and petitioner filed the claim at issue in this case. The department denied the claim in August, and petitioner requested a hearing.

While that request was pending, on September 2, 2011, the Friday before the MCSD school year began, the district cancelled the layoffs and notified petitioner that he would, in fact, be employed for the 2011-12 year; he subsequently returned to work on September 7. The hearing on his claim for benefits occurred later that month, on September 27. An administrative law judge (ALJ) affirmed the department's decision denying benefits, and petitioner sought review before the Employment Appeals Board (EAB). The EAB affirmed the ALJ, basing its decision on two grounds. First, the EAB concluded that petitioner was ineligible

because, during the weeks for which he claimed benefits, petitioner had reasonable assurance from his 2008-09 employer, HSD, that he would have employment in the 2010-11 academic year; and second, the EAB concluded that petitioner was ineligible because MCSD had rescinded its layoff, thereby rescinding the withdrawal of its reasonable assurance, effective retroactively.

> "[Petitioner] had worked for Hillsboro for more than four years. The witness for Department testified that the Department sent [HSD] a form asking specifically, 'if [petitioner] had not resigned, could he have continued in that same position * * * through [2009-10], and then into [2010-11]?' They marked 'yes * * * regular employee left on good terms to explore other employment opportunities.' * * * At hearing, the authorized representative [of the department] asked [petitioner] specifically whether he had 'heard anything' to suggest his position at [HSD] had been eliminated or reduced, to which [petitioner] replied, 'they did have some layoffs, but I don't know if I would have been affected if I had still been there.' * * * Based on the totality of the circumstances, we agree with the ALJ that [petitioner], more likely than not, had reasonable assurance of continuing his position with [HSD] in the [2010-11] academic year. However, it hardly matters, because there is no question that on September 2, 2010, [MCSD] renewed its April 2010 offer to employ [petitioner] in the [2010-11] academic year, and [petitioner] returned to work on September 7 * * *."

Petitioner now seeks judicial review.

We begin with the EAB's ruling that petitioner had reasonable assurance from the HSD that he would be employed there for the 2010-11 school year. Again, the department rules define "reasonable assurance" as follows:

> " '[R]easonable assurance' means a written contract, written notification or any agreement, express or implied, that the employee will perform services immediately following the academic year, term, vacation period or holiday recess which is in the same or similar capacity unless the economic terms and conditions of the employment in the second year or period are substantially less than the employment in the first year or period. A finding of

reasonable assurance may be based on the totality of circumstances."

OAR 471-030-0075(1). Petitioner contends that EAB erred in two respects: first, as a matter of statutory and regulatory interpretation, "reasonable assurance" given in one academic year (here, 2008-09) renders an employee ineligible for benefits only during the ensuing summer recess, and not during future summer recesses (here, 2010-11), and the EAB erred in concluding otherwise; and second that, as a matter of fact, the record does not support the finding that HSD *ever* offered him reasonable assurance of future employment for *any* time. Because we agree with petitioner's factual argument, we do not address his legal contention.

We review an agency's finding of fact in a contested case for substantial evidence. ORS 183.484(5)(c). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." *Id.* The EAB's finding—"[b]ased on the totality of the circumstances, we agree with the ALJ that [petitioner], more likely than not, had reasonable assurance of continuing his position with [HSD] in the [2010-11] academic year"—does not meet even this relatively low barrier. The only evidence that is even potentially relevant is hearsay testimony that HSD regarded petitioner as a good employee who, had he not resigned, would have been rehired. That falls far short of evidence that, some time in the 2008-09 school year, the district and petitioner had "a written contract, written notification or any agreement, express or implied, that [petitioner would] perform services immediately following the * * * vacation period." An after-the-fact conclusion that an employee would have been rehired, if he had applied, in no way implies that anybody ever informed the employee of that fact or that, had such communication occurred, the assurances would have survived a year of budgetary austerity measures. Petitioner was not asked if anybody at HSD had ever given him any assurances and he certainly did not testify to that effect. HSD did not appear at the EAB hearing (nor does it appear on judicial review). There is simply *no* evidence of reasonable assurances, as that term is defined. The EAB may be entitled to draw reasonable inferences from

facts in evidence, but it is not entitled to conjure findings from thin air.

The EAB also affirmed denial of benefits on the ground that "on September 2, 2010, [MCSD] renewed its April 2010 offer to employ [petitioner] in the 2010-2011 academic year." Apparently, the EAB reasons that the last-minute cancellation of the earlier layoff somehow served to retroactively establish the reasonable assurance that the layoff had negated.[1] As an abstract matter, that may be a logical conclusion. As a matter of statutory interpretation, however, it cannot be sustained. A school employee claimant is disqualified from receiving benefits during a recess "if the individual performs such [school-related] services in the first academic year or term and there is a reasonable assurance that the individual will perform any such services in the second academic year." ORS 657.221(1)(a). The EAB's conclusion necessarily interprets the statute to mean that disqualification occurs if "there is a reasonable assurance" of employment that comes into existence after a period of unemployment during which there was *not* a reasonable assurance—in other words, during the period of unemployment when the claimant *was* qualified for and entitled to benefits. The statute, however, uses the present tense: a claimant is disqualified during recess periods in which "there *is* a reasonable assurance" of employment in the next year. *Id.* (emphasis added). During the weeks for which petitioner claimed benefits, in other words, he met all of the requirements necessary to receive them. Respondents point to no provision allowing the department to deny benefits that, having been earned (in the sense of having been qualified for), are later declared to be unearned due to changed circumstances, and we have found none. Case law points in the opposite direction, albeit obliquely. In *Employment Div. v. Ring*, 104 Or App 713, 715, 803 P2d 766 (1990), *rev den*, 311 Or 432 (1991), for example, the claimant was fired and, while pursuing a wrongful discharge grievance, applied for and received unemployment benefits; subsequently, an arbitrator determined that her

---

[1] We say "apparently" because the EAB opinion presents a bare conclusion without reasoning or citation to authority, and the department did not appear on judicial review. Further, neither employer appeared at the hearing or on judicial review.

discharge was improper, and she was awarded back pay. This court affirmed an EAB order ruling that the department had no authority to recover the benefits, despite the fact that the claimant, as a result, would receive a windfall. *Id.* at 715, 718. It is true that, like the claimant in *Ring*, petitioner will receive what some might characterize as a windfall, because teachers and teachers' aides typically do not qualify for unemployment benefits during summer recess. However, our duty is to interpret the relevant statute, and our rules of interpretation do not contain an anti-windfall exception. *Id.* at 718.

The EAB's order is based on an erroneous interpretation of law and on factual findings that are not supported by substantial evidence. We therefore reverse and remand. ORS 183.484(5).

Reversed and remanded.